MSPA Claims Cases v. Covington Specialty. MSP Recovery Claims Cases v. Covington Specialty Insurance Company, MSP Recovery Claims Cases and MSP Recovery in these consolidated cases. What I would like to try to do during the time the Court has generously afforded us is to focus on the preemption issues in these two cases, which are two different stripes of preemption, and otherwise rest on our briefs unless the Court has questions on the other issues, and again, depending upon the Court's preference, my own preference would be to start with the United Auto case because it's a little bit simpler, and I have a feeling it's very possible during this argument to get lost in the briar patch of regulations and statutes. Can I start with a question on that one in that case? United Auto. Yes, on United Auto. We're talking about the Florida law provision. It seems like that's for making a Florida claim, and we're talking about a claim under the MSP Act, and so I'm wondering why the Florida provision would have any implication whatsoever or application. It doesn't seem like it's applicable, and that there's not even a preemption question, but I may be misunderstanding. I agree with you, Judge Rosenbaum. We briefed this issue just by making that point as an aside. I don't believe opponents responded to that, and I do think that if you look at the claim that's brought in this case, which is a Medicare Secondary Repair Act claim and breach of contract empowered by the MSP Act, that is very different from a beneficiary, a Florida citizen, asking for PIP, no-fault benefits, after injuries from a car accident, and the Florida statute, if I understand the drift of your question, asks about PIP benefit requests and claims made for those benefits. Those are two different things entirely. Now, the district court didn't address that issue, and so I'm proceeding with the . . . I guess my question, though, is if we're not talking about a claim under Florida law, do we even have to address the Florida statute at all? Do we have to consider how it . . . Does it have any application here? Do we have to consider it in considering a claim under the MSP Act? I think I'd answer that by saying it depends. I mean, if the . . . In the United Autos. Right, right, but if the . . . I see it as two different overlapping circles. You clearly have a federal claim. There are some federal claims under the MSP Act that could touch on and implicate a state's law. Sure, when you're looking at how the contract works, right? Like whether there's coverage, for example. For example, and that's more in the Covington case, because it's a contractual provision. In this case, though, to answer your previous question, though, it depends on what the state law says as well, and my point, and I thought what your opening question was about was, is that this state law pertains to claims for benefits for no-fault insurance. We're not dealing with . . . That is my point. We're not dealing with a claim for benefits for no-fault insurance. We're dealing with an MAO or the assignee of a Medicare Advantage organization empowered by federal law to make a claim for recompense for benefits it paid out against a primary payer, purely as a . . . What makes them a primary payer? Well, that's the body of precedent that this court has built. There's a definition of primary payer . . . Doesn't that depend on them being a no-fault insurer, or does it not? Yes, correct, by statutory definition. Yeah, so why is that different from the Covington situation, where the primary coverage point is by the policy itself? Right, I think . . . The primary . . . There's only primary coverage there if the no-fault provision to Florida law apply, and what the district court said is, well, that law has a pre-suit notice requirement. Right, so let me try to address that. I disagree with something I think I understood you just say, Mr. Breyer, which is that United Auto is a primary payer. That's not really disputed. They are a no-fault insurer that is a species of primary payer, as Covington is in its case, as it had a no-fault portion of its policy and also a liability portion of its policy for bodily injury, both of which fall under the definition. It is if the no-fault liability law under Florida law kicks in, right? No, I disagree with you on that. I mean, I think by definition, by the nature of the product they sell, what they do, they are definitionally primary payers. The question of whether their responsibility for this particular payment in question has been demonstrated is a separate issue, and that's what the summary judgment rulings both went out on, and the distinction you drew . . . I just want to make this really clear. In the Covington case, the reason summary judgment was granted by Judge Williams and Covington is because of the no-fault liability requirement that prevents us from demonstrating Covington's responsibility. In the United Auto case, it's not a contractual provision. It's this state statute, the Florida no-fault. But that liability, unlike the Covington situation, what gives rise to the liability in the first place? Isn't it the no-fault law? No. What gives rise to the liability is the insurance that United Auto offers. It's the contract, right? Well, ultimately, it is a contract somewhere in there. It's not really the focus, but right. There's a law . . . I mean, if there weren't a contract between United Auto and the insured, then we wouldn't be here on this case. Correct. Correct. I want you to help me with preemption. You agree it isn't field preemption, right? Correct. And you agree that it isn't express preemption, right? Not necessarily. I thought the whole argument turned on conflict preemption. Well, yeah. Maybe I'm using the wrong term. Okay, but I think technically . . . Conflict. . . . the argument turns on conflict preemption, which means, occurs when this compliance with both the federal law and the state regulation is either physically impossible or two, the challenge state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. That'd be a fair statement of the governing law, right? Precisely. And we're relying on the latter of those two prongs.  My question for you is, when I looked . . . Is there anything in the language of the act itself, in the statute, or in its statutory framework that suggested Congress wish to displace a state law pre-suit notice requirement? Yes, and . . . Tell me what. . . . it will indulge me. I will. I just want you to . . . This will require me to sort of go through a bunch of different steps. And we're talking about United Auto right now, just to keep it . . . Correct. My question is, preemption, conflict preemption, USAA case. The way . . . let me just tell you how I want to answer that question. I may not succeed in doing it because it's complicated. But I want to focus on two different things. The first thing is that there's a statutory scheme in this MSP Act that gives rise to certain ineluctable components that are inconsistent with having this Florida statutory pre-suit notice requirement. And second, other category, is that there are some express preemption provisions in the MSP Act as applicable to Medicare Advantage organizations. So if I . . . my answer to your question is if you look at the totality of them, it is quite clear that compliance with this defense that the insurance company is raising to an MSP Act recovery action for the benefits that have been paid out to an enrollee of a with that state statute. I mean, it seems to me like on top of the textual things you're pointing out . . . I haven't pointed them out yet, but yeah. I'm sorry? I haven't pointed them out yet, but I would like to. Yes. The thing you're relying on, though, is that otherwise it would effectively render the double damages a nullity. Is that right? Effectively correct, yes. And so why would anybody become a Medicare Advantage company, I guess, if they're . . . I guess they could still become one even if they don't get double damages. But I mean, why would you go to the trouble of trying to work this out if you don't get the double damages? Right. It's not just the double damages that are incentive to, frankly, payors, primary payors to pay up in a prompt manner, which is what the statute and the regulations desire. But it's also to make sure that the Medicare Advantage organizations, who incidentally are funded by the federal treasury to try to make a more efficient Medicare system in harnessing private entities, when they're paying money out and not getting . . . Isn't it . . . Isn't it possible, Mr. Rosenthal, both to provide notice of a lawsuit and then seek a remedy under the MSP Act? Yes, it's possible. Well, then there's not conflict preemption. No, I disagree. And here's why. It's not impossible, but under prong two of conflict preemption, it frustrates the . . . It's an obstacle to the accomplishment of the objective. So if the court will indulge me like a minute here, I want to try to run through these things. I'll just point them out, and then you can yank me off, as you will. So here are the two baseline propositions. You can use your time as you want. Now, you know that other case, your time is running on it, too. Yeah, right. So I'm going to move. First, the baseline concept of the MSP Act is that it places the burden on the primary payer to determine the plan if a person is entitled to Medicare benefits. This is evident from the following statutory provisions. 1395YB8Ai, Romanet 1, says the plan has a duty to determine whether a claimant is entitled to benefits under this subchapter. This court's recognized that in Baxter, Ace, and Metropolitan recently. It also has an obligation under the statute, the primary plan does, to notify CMS of the circumstance. That's 8Ai, sorry, Romanet 2. Second, there's another provision in the statute that says that the plans have to reimburse on their own initiative. That's 1395YB2B, also Romanet 2. And then the Baxter case from this court expounded upon why it is critical for constructive knowledge to be the operative provision here. If the primary plans have constructive knowledge that a Medicare recipient, or then a Medicare eligible person, was injured and incurred medical expenses, the plan needs to tell the federal government or the Medicare Advantage Organization. Why is that important? The onus is on them. We're talking about a statutory waiting period from a state that is saying you can't just put the onus on them. They have the benefit of the state law now to just wait until we ask them. That gets it completely backwards. So the demonstrated responsibility requirement to MAOs and CMS to recover is met by showing constructive knowledge. Adding a pre-suit procedural requirement would stand as an obstacle to the private remedy that Congress created because it flips the burden of the primary versus the secondary payer on its head. It adds a pre-suit exhaustion requirement that's clearly not in the statute, the federal knowledge. Those are all antithetical to the statutory scheme. Now the second point, moving a little quickly, I apologize, is that there are express preemptive provisions. Let me just touch on five provisions. 1395 W-26B3, this is for the Medicare Advantage Program, says state laws are preempted by standards that the Secretary adopts. Express preemption. 26, W-26B1 says the Secretary shall establish regulations for the MAOs to carry this out. So it delegates a responsibility. What did the Secretary do with that responsibility? There are three regulations the court should focus on, in my opinion. 422-108F, which says that the rules established under this section supersede any state laws, which would include the Florida PIP statute, that would otherwise apply to Medicare Advantage plans, and the Medicare Advantage organizations will exercise the same rights to recover from a primary plan, which is what we're talking about here in this action, that the Secretary exercises under the Medicare secondary payer regulations. Second, 411-.24B says that this is critical. Center for Medicare Services, CMS, the government doesn't have to wait to initiate recovery. It says, quote, Are you going to say anything about Covington before you say that? All right. Well, then let me just cite to you, Judge Breyer, also 411-.22. 411-.24B and 411-.22 both say the government or MAOs may recover immediately. They don't have to wait for anything. So it would be inconsistent. Let me flip to Covington, and I'm going to go into my rebuttal time by necessity. Let me provide the court a six-point roadmap through the Breyer patch here. I want to show the court that MAOs have an equivalent statutory empowerment that the government has to make conditional payments, to build primary plans for reimbursement, to recover from primary plans, including via lawsuit. If I establish that parity for that purpose against primary plans only, which is what we're talking about here, and the court agrees with that, then the regulation section 411-.24F1 overrides Covington's one-year claim filing provision. How does that happen? Point three, the provision I mentioned before, it's an elegant argument. I know it has the sounds of great oratory, but it's just technical. It happens through 1395-W-26B1, which I mentioned the legislative delegation to the secretary after Congress passed the Medicare Advantage law to promulgate rules to carry out Medicare Advantage. In that same 1997 legislation, Congress adopted 1395-Y-B2B subsection 6, which we've called subsection 6 for ease of reference, which resuscitated the regulation that the DC Circuit in 1994 had struck down in Shillela for lack of a statutory authorization, namely 411-.24F1. So then after that 1997 law was passed, creating Medicare Advantage and creating subsection 6, the secretary used its power conferred by the statute to promulgate 422-108F. That's the same powers provision. It gave Medicare Advantage organizations the same right to recover as the government had. Let me ask you a question about this Covington case. It kind of troubles me. It seemed to me that the best argument you had that this was a primary plan was that there was a settlement between Covington and PM. I think that's right. Paid 16 grand, and it looks to me pretty clear that one way of establishing that you are preparing a plan is whether there was a judgment or a settlement or something like that. A primary plan that has demonstrated responsibility. Exactly. The problem that I'm having is that I don't think it was pled in the complaint. And what it looks to me like, and you never sought to amend the complaint and had a whole comes up after the fact in the course of argument. And as I read our case law, that ain't going to make it. You can't alter your complaint simply by making a post hoc argument to a court. How do you get around that problem? Because save for that, I think the answer is very simple. You had a settlement between Covington and PM, and you could dispense with all this other stuff. But my problem is, I don't think it was properly fashioned in the complaint. And I don't know how that gets from A to Z, not having framed it or amended your complaint. This is an issue that I don't think I could improve upon from what we've written in the briefs. I would just tell the court, FRAXA, the unpublished decision, is I think the best authority for us from this court, which says that, and one thing I'll quibble with you on, Judge Marcus, is it didn't come up just in the papers. The issue came up during discovery, prior to even Covington moving for... So I understand the argument, but just speaking for myself, the problem is I read the complaint and re-read the complaint, and it's not in the complaint. You traveled by my reading on a very different theory. But I think you raise it, but you raise it later. And I'm just asking you, how do you get around the requirement of our law, which pretty clearly says the one thing you can't do is amend the complaint with a subsequent argument? So I think that, again, I'd rest on the briefs. I will tell you the one line in the complaint that I would say is closest to at least saying, hey, there's something else out there other than the bodily injury no-fault provision in their contract is DE55 at paragraph 51, which speaks also of liability policies. So that is the provision, the liability policy, which was settled. Here's the quote, defenders no-fault and liability policies are primary plans, which rendered defendant a primary payer for accident-related medical expenses. That's that paragraph. It says nothing about settlement. I'm referring, well, I don't have the complaint. Let me see if I have it here. Which it strikes me, I have the same problem Judge Marcus does. That's an entirely separate theory of liability, never pleaded. Yeah, so paragraph 51, just to make sure, defendants no-fault and liability policies are primary plans, which rendered defendant a primary payer. That's exactly what I just read. Okay, I just wasn't sure I heard it correct. Yeah, so I'm just saying that that also mentions liability policy, because the liability policy reference to the- Doesn't mention settlement, does it? Doesn't mention what? Doesn't mention settlement, does it? No, it doesn't. It doesn't. And so I'm not, look, I'll rest on our briefs on that issue. And I've got about, I think- The only reason I raise it is we've got a case, a Miccosoupi tribe of Indians versus the United States. A pretty prominent case we decided in 2013 and said a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment. And that's a pretty well-accepted line of authority. It's not really much disputed. Right. I mean, if the court will permit me, I'll rely on our briefs on that issue. I understand where you're coming from. Yeah, you've eaten into more than four minutes of your rebuttal time. I don't know how much you want to do. Right. I believe I have five minutes left. I'd like to reserve the rest. The only point I'd like to make, give me one moment if I may, is just to say that the 422-108-F regulation stands on strong statutory pillars and the court should accord Chevron deference to that like it has done in the past. And I will pick up that on rebuttal. Okay. Well, I'll give you five. I'm real generous. Thank you. Mr. Samus. Good morning. May it please the court. Scott Samus for Appellee Covington. I will just take one minute to address the pleading issue. Out of the first 12 paragraphs of the complaint, med pay is specifically mentioned as a theory. The complaint begins, the defendant has failed to fulfill statutory duties as no-fault insurers. That essential basis for the action is repeated in paragraphs 2, 3, 6, 8, and 12. All focusing on the med pay part of it. No mention of the settlement whatsoever. And there's only that one half of a sentence that mentions that the policy also includes liability. And with that, I'll address what the court asked us to address immediately. You know, the question is here is, does the MSP Act trigger coverage that would not otherwise exist? That's really fundamental to how we go through this entire thing. Because what the Medicare Act does is it presupposes that coverage has been triggered. That's what makes a primary payer. And that's what pulls that payer into the system. Can I turn your attention to the United case for just a moment? Are you arguing that one? No, no. I've got Covington, Your Honor. Oh, I'm sorry. Go ahead then. I apologize. Um, so let's start with four. If you look at my opponent's position, you would have to ignore many provisions in not only the statute, but the regs too. If you look at 411.53, it says a conditional Medicare payment may be made in no-fault cases under either of the following circumstances. Number one, the beneficiary has filed a proper claim for no-fault benefits. So it recognizes that the government, and by extension an MAO, should not even be making a payment unless there is a proper claim. Proper claim is defined in the regulation as a claim that is filed timely and meets all other claim filing requirements specified by the plan program or insurer. It is undisputed that did not happen in this case. In order to trigger coverage for this policy to be available to the Medicare system, first there has to be a report of the medical bills within a year of the incident. Everyone agrees that didn't happen. Yeah, I don't, are there any, is there any case law that says preemption would apply to a policy as opposed to a state law? No, Your Honor. And in fact, those provisions out of 422, they specifically talk about preemption of state law. Nobody says that you, that there is a preemption of the requirements of a contract, and that makes sense. Because in order for this policy to be available, in order to become a primary payer, it has to be triggered. And no one has ever ruled that. Their argument really depends on that notion, doesn't it? It does. It does. The filing deadline comes from the policy itself. Correct. And there is no preemption in any of this language. And in fact, a fine one would be contrary to the language. Because under 411.53 sub 2, it says that the only excuse for not filing the claim is the beneficiary, because of physical or mental incapacity, doesn't file a claim. So we don't have that. That language wouldn't be there unless they're required. Preemption doesn't work in this context. It does not work. Where it's a one year deadline from the policy itself. Right. They didn't plead the settlement theory of liability. Right. Is that the end of your case? That's the end of our case. Correct, Your Honor. And that's, you know, supported by the statute that says, notwithstanding any other timelines that may exist for a claim under an employer group health plan, this is an employer group health plan. And therefore, there is no preemption. The 411.24 also talks about insurance program or plan. If the adoption of subsection 6 just confirms that nothing in these regs or this statute reaches down and triggers coverage that hasn't been triggered. And with that, unless the court has more questions, I will yield the rest of my time to Thank you, Mr. Samus. Ms. Copperworth-White. May it please the court, Nancy Copperworth-White on behalf of Appley United Auto. Um, this appeal, unlike the Covington appeal, as the court has pointed out, involves the intersection of two statutes, the Federal MSP Act and the Florida PIP statute. I know that Judge Pryor and Judge Rosenbaum, you've recently had the pleasure of dealing with the PIP statute, but I just want to spend a little bit of time talking about, some of the details because I have different definitions of pleasure. But you made a very good decision in certifying it, Your Honor. Um, because there, as you probably know, there was then a case that came out from the second district certifying conflict. Um, the statute, which just celebrated its 50th birthday, is incorporated by law in every Florida automobile insurance policy, including, of course, the United Auto policy. Thus, whenever a driver is injured in an auto accident in Florida, PIP coverage applies. Something that every insurer, including, of course, AvMed, would know. I'm sorry to interrupt, but I want to make sure that I discuss this with you because it's troubling me a little bit. And that is that my understanding of the whole sort of revamped Medicaid and then MAO, etc., MSP plan or statutes, the idea behind it is for Medicaid to be the payer, not to be the primary insurer. Right. And towards that end, it makes certain incentives, such as double billing for, you know, double damages can be recovered by an MSP for when it recovers damages from or payment from a primary insurer who has failed to pay despite constructive notice of a claim. Right? Isn't that right? An MAO. Yeah. Yes, Your Honor. Only in the litigation context, as a matter of last resort. But that's the point, right? You could get double damages if you're an MAO. You could get those double damages. And that's an incentive, not only an incentive for the MAO to sue, but more importantly, an incentive for the primary insurer not to shirk its constructive notice. And if the PIP statute applies here, it seems like it totally erases that. I mean, there will be no such thing as double damages or that cause of action against the primary insurer in the PIP situation, or will there? Maybe I'm misunderstanding, but I don't see how you could ever recover it if all you have is constructive notice. Your Honor, there's no obstacle here, which is, Judge Mark has pointed out, is the issue. Is there an obstacle? Okay, I'm sorry, but can you just first answer that question? No, no, I am. I'm saying there is no obstacle to bring it to an MAO filing their claim for double damages. All that is required here is that the MAO, before filing suit, and this is only a 30-day delay, provide notice of exactly what the claim is and allow the insurance company to evaluate. If they do that, then they could go forward with the double damages. Absolutely, Your Honor, absolutely. As I understand Mr. Rosenthal's argument is, and he makes an elaborate argument as to why it creates an obstacle, it makes it harder enough to constitute an obstacle. The test is not, is it possible both to provide notice of pre-suit and then sue under the statute? Which we know that the MSP folks have done in other cases, including the first exception. Does it create a sufficient obstacle here? An obstacle doesn't render it impossible. An obstacle renders it more difficult. And his argument boiled down, if I got it right, was that it creates enough of a difficulty, enough of a problem to fall into the terminology of an obstacle. Do you want to address that for me? I do. I do, Your Honor. I think that's the essence of the argument. Let's start with the definition of what a prompt payment is under the CFR. It says, in the MSP Act context, a prompt payment is payment within 120 days. The PIP statute, however, requires insurers to make payments within 30 days of notice. Then, if a PIP insurer fails to make a prompt payment, the insured, the provider, the MAO, whomever, then has to provide pre-suit notice with a 30-day cure period. So, there is no obstacle to a prompt payment here. In fact, the PIP, payments under the PIP statute are more prompt or fast than under what the But it builds in, it builds in a 30-day delay. It builds in a 30-day delay, but not only does it build in a 30-day delay, it helps to try to what's going to happen. In this case, for example, let me just give you an example of the second exemplar. United Auto, and this is all on the record because there were multiple grounds for summary judgment raised, United Auto contacted the insured and said, we understand there has been an auto accident. We were notified of the auto accident. Were you injured in the auto accident? No. Did you have any treatment? No. So, United Auto was totally unaware of that claim. If there had, in fact, been compliance with the pre-suit notice requirement, United Auto would have gotten that notice and said, oh, well, of course, you know, that's our obligation. We'll pay that. Let me make sure I understand something, the way this system works from something I think you started your argument with, which is that the pre-suit notice requirement and these deadlines, to the extent that they're provided by statute, they govern any of these kinds of policies in Florida, right? So, there's no need to put them in the policies themselves. Well, they are generally in the policies themselves, but they are also incorporated. They would be incorporated by the law, right? By law, yes. We cited the Florida statute in our brief. There's really not much of a distinction between this and Covington. Exactly, Your Honor. Exactly. It is part of the contract, and I want to point out also one thing that's important in this case is there are two counts in this complaint, and the second count is for breach of the insurance contract, and in paragraph two of the complaint, it states, pursuant to their contractual obligations with their insureds and under state law, defendant is to provide coverage for its insured's accident-related medical expenses on a no-fault basis. So, that is exactly what the complaint is alleging. They're alleging a claim based on the insurance policy, based on Florida law. Can I ask you a question, getting back to the first thing I was asking you about? Does the fact that, let me see how I can ask this. My question for you relates to whether the fact that the 30-day period or the notice requirement, I guess, prevents the insurer, the primary insurer from having to make a payment and not incur double damages, does that somehow inhibit primary insurers from making the payments once they have constructive notice, sort of preemptively? Do you understand what I'm saying? I do. I do. And I want to just go a little outside this case to talk about real world. In the real world, because of the PIP statute and its expedited payment provision, because of the fact that there is a very large bar of Florida PIP attorneys that file thousands, tens of thousands, hundreds of thousands of cases, and essentially are 75% of the caseload of the Florida County Courts, there is no incentive whatsoever for PIP insurers to wait. They make payments immediately. In this case, for example, in the other exemplar, they got the bill from the hospital. It was paid immediately. There's no dispute on that. You said earlier, though, that the MSP type claimants have, in fact, in many instances complied with this? I can't say in many instances. We know that they have. There is, in the first acceptance case that we cited where that's a district court case, we know that they discussed the demand letter in that case. I can say, personally, my firm has gotten demand letters in other cases, so we know that they have. Well, I guess I'm mainly interested in what we can know from the record and what we can know from reported cases, the sort of thing we could take judicial notice of. You can certainly take judicial notice of that case. If Your Honor would like, I could provide other cases. No. I don't want to develop a record here. Okay. But the PIP insurer under the statute, Your Honor, and this is also important about the demand letter, going back to Judge Rosenbaum's question, has its own penalty provision. So, if a payment is, first of all, let's just say a payment is late, but there's no demand letter. The insurer has to pay interest. But then let's say it gets a demand letter. And keep in mind, there's this whole bar of plaintiff PIP attorneys that on day 31, they send out demand letters. They're sending out dozens of demand letters every single day. If a payment is made under subsection 10, the insurer has to pay the claim. It has to pay the interest. It has to pay a statutory penalty. And it has to pay postage because the claim has to be done by certified mail. And it has to do all of that, again, within this 30-day period. It has to analyze it and everything else and then make that payment. So, there's no incentive for an insurer to wait. In some cases, as we saw with the second exemplar, a claim may slip through the cracks even though it was investigated. And in that case, you may have a good basis to make a demand letter and to resolve a claim. But there's no incentive here for a late claim. Okay. Ms. Copperthwaite. Thank you, Your Honor. Okay. So, we would encourage the court to affirm Chief Judge Altanaga's decision. And if there are no other questions . . . There aren't. Thank you. Mr. Rosenthal, you've saved those generous five minutes. Thank you, Chief Judge Breyer. I'd like to hit on two basic themes that just came up during my opposing counsel's presentations. First, on the United Auto case. The question about whether or not our argument is, as Judge Marcus put it, a sufficient obstacle making it more difficult and therefore preemption applies. That's exactly right. And the obstacle is a reality. They make it sound like all you have to do is wait 30 days. And I can't comment on what the marketplace for PIP attorneys is and how they do their notice letters. But what I can comment on is what the statute and the regulations say, which is that, and what this court has recognized in Baxter, that the whole MSP scheme that Congress created and that the Health and Human Services Secretary adopted pursuant to that statutory authorization is that when the federal government lays out money or its ally, the MAO, Medicare Advantage Organization, a private entity contracted with the government to do the same thing and provide the same efficient service, more efficient service, when they lay out money for a Medicare-eligible person's injuries, their medical expenses, that has to be repaid back as quick as possible. And we know this. A couple things. And there are regulations that say, 41124B, Center for Medicare Services does not need to wait to initiate recovery. CMS may initiate recovery as soon as it learns. That's the regulatory language. As soon as it learns that payment has been made or could have been made under any work comp, liability, or no-fault insurance or an ER group health plan. Section 41122, a primary plan must reimburse once it is demonstrated that it has responsibility. So the obligation occurs immediately under federal law. Even a 30-day delay violates that principle. You might say, well, what's 30 days? Well, the question is, who bears the float? Should it be the federal FISC or should it be the insurance company? She makes an interesting argument. Among other things, Mrs. Copperthwaite says that building in the 30-day delay, if I heard it right, actually facilitates the efficacious resolution of the claim. Well, I guess the question is, in this case, why isn't this the example that disproves that point? I mean, in the case of WT, one of the two different exemplar plaintiffs, United Auto knew from the hospital bills, and this is in the record, that Avmed, the assignor here, was the payor for that person. Under the rules, they had to go and find out, okay, Avmed, we're going to make a payment. Have you made a payment for this hospital bill? Had they done that, which they didn't, and they're a no-fault payer, so they just got to pay, they would have sent the money. They would have found out, yes, they would have sent the money to Avmed, who would have been reimbursed, and it would have mooted the claim. They didn't do that because they didn't follow their obligation. So, they paid the hospital twice. Now, under the law, the MAO is entitled to go recoup the payment it made from them. We're trying to do that, and now they're asserting this 30-day demand. I take it your view is that any time limit in the PIP constitutes an obstacle for preemption purposes. You don't even have to take that position, Judge Marcus. I can say that this particular time limit is extended. Would 15 days be okay? I don't know. I know that 30 days— The problem is you're pulling with two different values and different ends, and 30 days strikes one as a reasonable period in order to be able to resolve this stuff promptly and avoid the necessity of a lawsuit. If you move it up much, you render that time period ineffective, don't you? The time period may make a difference, but don't kid yourself that it's just 30 days under the Florida statute. If you look at—I think it's section 4B of that subsection 10. It allows for extensions, okay? So, there are additional time periods. It's a very long statute, this subsection 10 of the state statute. So, it's not just 30 days, okay? That's the simplest way to view it because it is at a minimum 30 days, and they have the right to cure, which Judge Rosenbaum's point would then completely eviscerate the  Who would be asking for the extension? That'd be you, right? I believe that they can ask for the additional time because they're contesting a portion— For an extension of someone else's pre-suit notice? I believe that's the way that the state statute operates. How did they get a—I don't understand that. Well, I would have to—I haven't memorized those provisions of the state statute. I'd appreciate that, but— That doesn't really make much sense to me. How there would be an extension of your pre-suit notice by the— No, of their 30-day window to respond and pay in response to the notice. That's different. The problem here is your failure to provide the pre-suit notice. Which appears nowhere in the Federal Act. Let me just respond to one more point, if I can have 30 seconds. I already gave you a lot of time, Mr. Rosenthal. Well, it's to your own question, Judge Pryor. If I may, you asked whether— I'd like to hear the answer. Okay, thank you. It's simple. You asked my opposing counsel whether a preemption— Is there any such thing as preemption of a contract provision as opposed to a state law? And I just want to—I had the same question in preparing for this argument, and I will tell the court there's a case from the United States Supreme Court that I think at least addresses this issue somewhat. It's not in the briefs. It's called Northwest v. Ginsburg, 572 U.S. 273 at 283 to 84. It basically says that a federal statute's objectives, quote, can be undermined just as surely by a state common law rule as it can by a state statute or regulation. Here, the common law rule would be the contract right to stand upon. It's not the same thing, but I take your point. I just wanted to bring that to the court's attention. Okay. I appreciate the court's generosity with its time. We're in recess until tomorrow. Thank you.